UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES J. JONES**<br>    LA. DOC #531532<br>VS. | **CIVIL ACTION NO. 6:13-cv-2937**<br><br>**SECTION P**<br><br>**JUDGE REBECCA F. DOHERTY** |
| **IBERIA PARISH WORK FORCE,**<br>**ET AL.** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Charles J. Jones, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on October 22, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Riverbend Detention Center (RDC), however, he complains that he was unfairly discharged from the work-release program associated with the Iberia Parish Jail (IPJ). He sued the Iberia Parish Work Force (IPWF), the work-release program administered by the Iberia Parish Sheriff,  and IPJ Warden Frank Ellis praying that his work status be reinstated and that he be compensated for "mental stress, loss of wages, deliberate indifference and prejudice." He also maintains that his discharge from work-release was in violation of the Americans With Disability Act (ADA).

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff is an inmate in the custody of the DOC. In August 2012 he was assigned to the

work-release program in Lafayette working as a sandblaster for Louisiana Sandblasting. He was laid off when work slowed down. In December 2012 he passed a physical examination and resumed working as a sandblaster/painter for Allison Offshore where he earned $15.50/hour. On some unspecified date he was terminated and returned to RDC. (According to plaintiff his termination from work-release was the result of a grievance he submitted to the DOC about not being allowed to attend his grandfather's funeral.)

On July 24, 2013 he was sent to the Iberia Parish Work-Release program. He advised the administrators that he was a sandblaster and admitted that he had previously undergone surgery on some unspecified date and for some unspecified condtion. On July 25, 2013 he was removed from Work-Release and housed in the IPJ. Then, on August 14, 2013 he filed an Administrative Remedies Procedure (ARP) grievance. On August 16, 2013 the administration responded to his grievance and advised him that he was ineligible for work-release because of a previous back surgery. According to plaintiff, the back surgery was in 1985. According to plaintiff, Warden Ellis "made a bad decision concerning [his] ability to work." He also failed to send plaintiff to the job site or set up a physical exam to determine if he could participate in the work-release program.

Plaintiff also alleged that the actions of Warden Ellis are in violation of the ADA because plaintiff is a qualified individual with a disability who was discriminated against on the basis of the disability.

Plaintiff submitted a grievance to the DOC Head Quarters. On March 7, 2013 the Secretary's designee denied relief noting, "Pursuant to B-02-015, an offender may be removed from the program for any other reason deemed by the Department to render the offender

ineligible to complete the program other than disciplinary actions. In six month you may make a request with the warden at the facility in which you are housed to be placed back in work release." [Doc. 1-2, p. 1]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Juridical Person*

Plaintiff named "Iberia Parish Work Force" as a defendant in the caption of his *pro se* complaint. [Doc. 1, p. 1] Thereafter, he did not identify "Iberia Parish Work Force" as a party to

3

the lawsuit [Doc. 1, ¶ III], nor did he identify an particular fault on the part of the IPWF. [Doc. 1-1] It therefore does not appear that he intended to name the IPWF as a party defendant. In any event, Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether an entity such as a corrections facility or prison management company has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. It does not appear that plaintiff intended to name IPWF as a defendant, however, if he did, then he must show that IPWF is a juridical person capable of being sued. It does not appear that the IPWF is a juridical entity capable of being sued. Therefore, as to this defendant, plaintiff has failed to state a cause of action.

### 3. Work Release – Due Process/Equal Protection

Warden Frank Ellis is a proper party defendant. In order to obtain injunctive relief or to hold him liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *See Hessbrook v. Lennon*, 777 F.2d 999, 1005 (5th Cir. 1985). Plaintiff claims that Ellis, who is a state actor, deprived him of his right to participate in the Iberia Work Release and thereafter any other work release programs associated with the DOC; he thus implies that in so doing, the defendant deprived him of liberty or property without due process.

Plaintiff has neither a liberty nor property interest in the work release program and

therefore his due process claims are frivolous. La. R.S.15:1111, the statute establishing the work release program, provides in part, "The Department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 does not create a liberty interest subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of entitlement to it." *Id.* (emphasis supplied). Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's

interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). Plaintiff can point to no rule or understanding which entitle him to participate in the program. In any event, the Fifth Circuit has also held that prisoners have no property interest in work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995). Plaintiff is not entitled to participate in any particular work-release program and therefore to the extent that he implies that he was denied either a liberty interest or a property right in violation of the Due Process Clause, such claims are subject to dismissal as frivolous.

### 3. ADA

Plaintiff also maintains that Warden Ellis violated the Americans with Disabilities Act or ADA when he determined that plaintiff was ineligible to participate due to his previous back surgery. According to plaintiff, the surgery, which occurred in 1985, did not and does not prevent him from participating in work-release programs as a sandblaster/painter, nor did it prevent him from being able to work or lift 50-100 lbs., and therefore Ellis's actions in preventing plaintiff from applying for work was an act of "prejudice and bias" on his part.

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." §12132 (2000 ed.). Under the Act, a " 'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reason modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for receipt of

services or the participation in programs or activities provided by a public entity." §12131(2). The Act further defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" or "a record of such an impairment" or "being regarded as having such an impairment." 42 U.S.C. §12102(1). The ADA does not define "substantially limits" and "major life activities". But, regulations promulgated by the Equal Employment Opportunity Commission under the ADA define both. "Major life activities" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Plaintiff has not alleged, nor does the record herein reflect, that he has an impairment that limits, much less substantially limits, one or more major life activities. Indeed, plaintiff maintains that he is otherwise fit and able bodied. Therefore his claim under the ADA must be dismissed as frivolous.

*Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint and his complaint under the ADA be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Lafayette, Louisiana January 8, 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE